UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RILEY CLOSSON, | ) |
|        Petitioner, | ) |
|     v. | ) No. 1:20-cv-02880-JMS-MJD |
| WARDEN, | ) |
|        Respondent. | ) |

**ENTRY DENYING PETITION FOR WRIT OF HABEAS CORPUS
AND DIRECTING ENTRY OF FINAL JUDGMENT**

In July 2020, Riley Closson was disciplined for assaulting a correctional officer at the Indiana Women's Prison. Ms. Closson challenges her disciplinary conviction in a petition for a writ of habeas corpus. For the reasons discussed below, Ms. Closson's petition is denied.

**I. Overview**

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning class without due process. *Ellison v. Zatecky,* 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan,* 485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal,* 723 F. App'x 347, 348 (7th Cir. 2018). The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill,* 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell,* 418 U.S. 539, 563-67 (1974).

## II. The Disciplinary Proceeding

On July 1, Ms. Closson was confined on suicide watch under close observation. Dkt. 8-14. According to Sergeant Kohlhepp's conduct report, Ms. Closson went to the latrine, then refused to put on clothing or return to her observation cell. Dkt. 8-1. The report states, in relevant part:

> I had the suicide smock ready for her to put on. I attempted to put the smock on her and at this time was when she passively resisted and went down to the floor and crossed her ankles and put her arms over her knees. She stated she was not going back to the cell unless she showered, I gave her clear and direct orders to cooperate. She did not and stated that I was going to have to spray her. I advised her, that I will not be doing what she wants, and she will be returning to her cell. At this time Officer F. Mcqueen attempted to place the smock on her and offender Closson grabbed it and threw it towards Officer F. McQueen. I then advised Sergeant S. Hobgood to look for a blanket we could use to wrap around her to get her out of the latrine area. When Sergeant S. Hobgood returned with the blanket I advised offender Closson again to cooperate. I then attempted to place the blanket [on] offender Closson, she then began to kick and fight with myself and Officer F. McQueen. Offender Closson then struck myself in my right arm with her left foot.

*Id.* Afterward, Ms. Closson was charged with assaulting Sergeant Kohlhepp in violation of Code 117. Dkt. 8-2.

When Ms. Closson was notified of her disciplinary charge, she asked to call Sergeant Kohlhepp to testify at her hearing and demonstrate that she did not kick Sergeant Kohlhepp intentionally. *Id.* The hearing officer denied Ms. Closson's request, reasoning that Sergeant Kohlhepp's conduct report would serve as her statement. *Id.*

Ms. Closson also asked to review security video of the incident, any pictures of Sergeant Kohlhepp's arm, paperwork related to her suicide watch, and the prison's policies and procedures regarding uses of force. *Id.* The screening officer, Sergeant Pavey, determined that no security cameras captured the incident because there were no cameras in the latrine and that Sergeant Kohlhepp's arms were not photographed. Dkt. 8-13 at ¶¶ 5–6. She provided Ms. Closson with the suicide watch paperwork, although not until after the disciplinary hearing. *Id.* at ¶ 3. She

2

did not disclose the use-of-force protocols because she determined that would compromise prison security. *Id.* at ¶ 11.

At her hearing on July 14, Ms. Closson admitted that she "was flailing" but insisted that she "didn't do anything intentional." Dkt. 8-5. The hearing officer found Ms. Closson guilty of violating Code 117 and assessed sanctions, including a loss of 120 days' earned credit time and a demotion in credit-earning class. *Id.* Ms. Closson's administrative appeals were unsuccessful. Dkts. 8-8, 8-9.

### III. Analysis

Ms. Closson raises several challenges concerning the sufficiency of the evidence against her and her right to present evidence in her defense. These challenges fail for the reasons discussed below.[1]

**A.      Sufficiency of Evidence**

Ms. Closson mounts several challenges to the sufficiency of the evidence against her. "[A] hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary." *Ellison*, 820 F.3d at 274. The "some evidence" standard is much more lenient than the "beyond a reasonable doubt" standard. *Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002). "[T]he relevant question is whether there is *any evidence* in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455–56 (emphasis added); *see also Eichwedel v. Chandler*, 696 F.3d 660, 675 (7th Cir. 2012) ("The

---

[1] Ms. Closson also asserts that she was subjected to cruel and unusual punishment in violation of the Eighth Amendment because she was denied showers and sanitary napkins while on suicide watch. Dkt. 1 at 3. But "habeas corpus is not a permissible route for challenging prison conditions." *Robinson v. Sherrod*, 631 F.3d 839, 840–41 (7th Cir. 2011). Ms. Closson is pursuing those allegations in a civil rights action under 42 U.S.C. § 1983. *Closson v. Kohlhepp, et al.*, no. 1:21-cv-00772-TWP-DML.

some evidence standard . . . is satisfied if there is any evidence in the record that could support the conclusion reached by the disciplinary board.") (citation and quotation marks omitted).

The "'some evidence' standard" is "a 'meager threshold.'" *Jones v. Cross*, 637 F.3d 841, 849 (7th Cir. 2011) (quoting *Scruggs*, 485 F.3d at 939). Once the Court finds "some evidence" supporting the disciplinary conviction, the inquiry ends. *Id.* This Court may not "reweigh the evidence underlying the hearing officer's decision" or "look to see if other record evidence supports a contrary finding." *Rhoiney*, 723 F. App'x at 348 (citing *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000)).

Code 117 punishes an inmate for "[c]ommitting battery against a staff person." Dkt. 8-10. The Disciplinary Code defines battery as "[k]nowingly or intentionally touching another person in a rude, insolent or angry manner." Dkt. 8-11.

"Some evidence" supports the hearing officer's conclusion that Ms. Closson committed battery against Sergeant Kohlhepp. According to the conduct report, Ms. Closson refused orders to dress and return to her cell, threw her smock at an officer, and then began to flail and kick. Dkt. 8-1. From this evidence, the hearing officer could reasonably conclude that Ms. Closson touched Sergeant Kohlhepp angrily.

Ms. Closson argues that, due to her mental state, she could not touch Sergeant Kohlhepp knowingly or intentionally as Code 117 requires. But the conduct report documents that Ms. Closson refused to dress or return to her cell until she showered, sat down on the floor to resist being returned to her cell, and said the officers would have to spray her to force her compliance. Dkt. 8-1. From this evidence, the hearing officer could fairly conclude that Ms. Closson was aware of her surroundings, condition, and actions; that she was angry that she could not clean herself; and that she flailed and kicked as part of her conscious effort to resist the officers. Whether or not

Ms. Closson meant to kick Sergeant Kohlhepp, the conduct report supports the conclusion that Ms. Closson was knowingly flailing her legs in active physical resistance when they struck Sergeant Kohlhepp.

Ms. Closson also notes that no video evidence confirmed that she kicked Sergeant Kohlhepp knowingly or intentionally and that no pictures showed that she injured Sergeant Kohlhepp. This is true. But no video evidence or pictures were available, and Code 117 did not require that Ms. Closson injure Sergeant Kohlhepp to commit battery. These arguments challenge the weight of the evidence against Ms. Closson. Because "some evidence" supports her disciplinary conviction, the Court cannot reweigh the evidence or search for evidence that might undermine the hearing officer's decision. *Rhoiney*, 723 F. App'x at 348.

**B.    Denial of Evidence**

Ms. Closson also argues that she was deprived of her right to review certain evidence and present it in her defense. The defendants have documented, and Ms. Closson does not dispute, that some of the evidence she requested did not exist. No security cameras captured the incident inside the latrine, and no pictures showed Sergeant Kohlhepp's arms. Dkt. 8-13 at ¶¶ 5–6. "Prison administrators are not obligated to create favorable evidence or produce evidence they do not have." *Manley v. Butts*, 699 F. App'x 574, 576 (7th Cir. 2017). The prison staff could not deprive Ms. Closson of due process by failing to produce pictures and video that never existed.

Ms. Closson also asserts that she was denied pictures of her own arm and "suicide watch paperwork, which is [her] witness statements from offenders." Dkt. 1 at 2. The Court understands that Ms. Closson refers to the watch reports kept by her suicide companions, who were responsible for monitoring Ms. Closson and recording behavioral observations. *See* dkt. 8-14.

Due process requires "prison officials to disclose all material exculpatory evidence," unless that evidence "would unduly threaten institutional concerns." *Jones*, 637 F.3d at 847. Evidence is exculpatory if it undermines or contradicts the finding of guilt, *see id.*, and it is material if disclosing it creates a "reasonable probability" of a different result, *Toliver v. McCaughtry*, 539 F.3d 766, 780–81 (7th Cir. 2008). As the petitioner, Ms. Closson faces the burden of establishing that any evidence she was denied was material and exculpatory. *See Piggie v. Cotton*, 344 F.3d 674, 678 (7th Cir. 2003) (noting the petitioner did not "explain how [the requested witness's] testimony would have helped him" and thus "the district court properly denied relief" on the petitioner's claim that he was wrongfully denied a witness).

Ms. Closson has not explained how pictures of her own arms would aid her defense. She states that the officers bruised her arm when they restrained her and picked her up. *See* dkt. 1-1 at 3. But the condition of her arms and the officers' use of force against her are not relevant to the question of whether she battered Sergeant Kohlhepp. To the extent Ms. Closson argues that her conduct would be justified and not subject to discipline if the officers injured her, she is incorrect. "Prisoners lack even a right to invoke self-defense in disciplinary proceedings when they have resorted to violence as a means of protecting themselves." *Gevas v. McLaughlin*, 798 F.3d 475, 484 (7th Cir. 2015).

Similarly, Ms. Closson has not explained how the watch reports would have undermined the hearing officer's decision or raised the possibility of a different outcome. Reports from the time of the incident document that Ms. Closson returned from the latrine about 1:25 A.M. with a bruised arm, that she said officers lifted her off the toilet in the latrine, that officers confiscated her sleeping mat, and that she stood at the door and talked to an officer. Dkt. 8-14 at 2. Ms. Closson has not

provided any reason to determine that these reports are relevant to whether she knowingly or intentionally kicked Sergeant Kohlhepp while she was flailing in the latrine.

At screening, Ms. Closson requested Sergeant Kohlhepp's testimony, and that request was denied. Dkt. 8-2. To the extent Ms. Closson argues here that this deprived her of due process, she has not provided any information about what she would have asked Sergeant Kohlhepp and therefore has not demonstrated that her testimony would have been material and exculpatory.

In sum, Ms. Closson did not receive evidence she requested at screening. However, she also has not demonstrated that any of that evidence was available, material, and exculpatory. Accordingly, she has not identified a due-process violation.

### IV. Conclusion

"The touchstone of due process is protection of the individual against arbitrary action of the government." *Wolff,* 418 U.S. at 558. Ms. Closson's petition does not identify any arbitrary action in any aspect of the charge, disciplinary proceeding, or sanctions that entitles her to the relief she seeks. Accordingly, Ms. Closson's petition for a writ of habeas corpus is **denied** and the action **dismissed with prejudice.** Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 10/21/2021

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

RILEY CLOSSON
222513
PLAINFIELD - CF
PLAINFIELD CORRECTIONAL FACILITY
Inmate Mail/Parcels
727 MOON ROAD
PLAINFIELD, IN 46168

Katherine A. Cornelius
INDIANA ATTORNEY GENERAL
katherine.cornelius@atg.in.gov